# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| CARL SKOW, | : | MOTION TO VACATE |
| BOP ID 62986-019, | : | 28 U.S.C. § 2255 |
|   Movant, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:15-CV-714-CAP-CMS |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION NO. |
|   Respondent. | : | 1:11-CR-373-CAP-CMS |

## FINAL REPORT AND RECOMMENDATION

This matter is before the Court on Carl Skow's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [116], the government's Response [133], and Skow's Traverse [134]. For the following reasons, the undersigned (A) **CONCLUDES** that an evidentiary hearing is unnecessary and (B) **RECOMMENDS** that (i) Skow's § 2255 motion be **DENIED** and (ii) a Certificate of Appealability be **DENIED**.

Because Skow is proceeding *pro se*, the undersigned has liberally construed his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a § 2255 movant is not entitled to a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). This is such a case.

On July 7, 2011, Skow was charged by Criminal Complaint with violating 18 U.S.C. § 2422(b) by "using a means of interstate commerce, to wit, a computer, [to] knowingly attempt to persuade, induce or coerce a [minor] to engage in . . . sexual activity" that is punishable as child molestation under O.C.G.A. § 16-6-4.  *See* [1].  After a search of Skow's home computer turned up evidence of additional crimes, the government obtained a three-count Indictment charging him in Count One with violating 18 U.S.C. § 1591(a) & (b)(2) and § 1594(a) (attempting to obtain a minor to engage in a commercial sex act), in Count Two with violating 18 U.S.C. § 2422(b) (enticement of a minor), and in Count Three with violating 18 U.S.C. § 2252(a)(4)(B) (possession of child pornography).  *See* [12].

Through retained counsel, Skow moved to suppress the evidence found in the search of his home computer.  After two evidentiary hearings, Skow's motion to suppress, as amended and supplemented, was denied.  *See* [85 (Final Report and Recommendation)] & [89 (Order)].  One week before the scheduled start of trial, Skow pleaded guilty to Count Two of the Indictment.   *See* [104-1 (Plea Agreement)] & [113 (Judgment and Commitment)].  Counts One and Three were dropped.  *See id.*

The following facts were proffered by the government at the Rule 11 hearing:

> . . . On June 3, 2011, Homeland Security Special Agent David Westall, acting in an undercover capacity, responded to an advertisement on backpage.com in which the poster was seeking a younger girl, preferably Asian, for sex in exchange for money. The poster was later identified as the defendant, Mr. Skow. Agent Westall sent an e-mail to the defendant stating that Westall had two 15-year-old girls in the United States, and that the defendant could have one for one year for twenty-five hundred dollars, or go to Guatemala and pick out the girl he wanted for four thousand dollars. The defendant replied by asking for more information and pictures of the two 15-year-old girls, but when Agent Westall sent him the pictures of the two girls, the defendant stated that he was not attracted to those girls and asked Westall for a slimmer girl with longer hair. Westall responded by sending three images of a girl named Mariana, who Westall stated was 14 years old.
>
> About an hour later the defendant responded in an e-mail stating much better, yes. How much to get her here? If deal is good, we will move forward, I think. Westall responded that the cost would be twenty-five hundred dollars. Minutes later the defendant responded, this is a good deal if you make sure everything is smooth. Let's meet. I will call tomorrow.
>
> On June 10 of 2011, Westall placed a recorded telephone call to a number given to him by the defendant in an e-mail which the defendant described as his drop phone he had purchased solely for communicating with Westall. During the telephone conversation Westall provided the defendant with a new e-mail address and password and explained that rather than exchanging e-mails they should communicate using a common e-mail account and they would each draft e-mails, but not send them, and then each look into the account to exchange communication.

Westall also told the defendant that Mariana's fifteenth birthday was on July 4th and asked if it would be all right if she could celebrate her birthday in Guatemala before she was delivered to the defendant. The defendant did agree to that plan. Using the e-mail account, the defendant and Westall exchanged draft e-mails using that account and ultimately arranged another telephone call which occurred on June 13 of 2011. I'm sorry, they arranged for an in-person meeting which occurred June 13, 2011.

On June 13 they met in Sandy Springs, Georgia. During the meeting the defendant explained he was coming out of a long-term relationship and was looking to see what came from the ad, meaning his online solicitation, because he was trying to get out of a funk. The defendant said he had to clear some of his ex-girlfriend's stuff out of the house before Mariana could move in with him. Westall told the defendant if he got tired of Mariana that they would take her back. The defendant replied, "She is young and young girls are f-ing stupid." The defendant and Westall agreed to communicate by text messages to coordinate her arrival, meaning Mariana.

When he left the defendant handed Westall an envelope containing twelve hundred and fifty dollars as partial payment for the girl. On June 19th of 2011 the defendant and Westall spoke again to arrange another meeting and discuss Mariana's arrival. On June 22nd of 2011 the defendant and Westall met again at a bar in Sandy Springs. The defendant asked Westall how they would be able to get Mariana to the United States. Westall explained his girlfriend's cousin would buy a ticket and put Mariana's name on, and because Mariana was a minor, she would not be required to show identification.

The defendant indicated he was preparing his home for Mariana's arrival and intended to purchase a bicycle for her to get around on because she was too young to drive. Following the second meeting, the defendant gave Westall his real phone

4

number and using that number the defendant and Westall exchanged text communications to arrange for the defendant to meet Westall and Mariana at the airport.  The defendant and Westall agreed to meet in the afternoon on July 6th of 2011 in the atrium food court of Hartsfield Jackson International Airport where the defendant was to pay Westall twelve hundred and fifty dollars, the remaining amount, and to pick up Mariana.

On July 6th of 2011 the defendant sent several text messages to Westall to arrange the meeting.  At approximately 4 p.m. the defendant did meet Agent Westall as planned at the airport where he was arrested and in possession of the twelve hundred and fifty dollars.

Simultaneous with his arrest, other agents executed a search warrant at the defendant's residence in Norcross, Georgia.  In a bedroom agents found a desktop commuter.  A subsequent forensic examination of that computer showed the defendant possessed thousands of images of child pornography, including images of girls with the same appearance and same age range as Mariana, in addition to images of very young children including toddlers being sexually assaulted.

Agents also found a document taped to the wall in the defendant's home in one of the bedrooms that was written to Mariana.  It was written in both English and Spanish and included some of the following statements: "Be obedient. I'm a nice man and will be good to you.  You must take a shower almost every day and stay clean.  I will give you bubble bath first night and show you how nice it is.  Clean house.  It is not too big for two people so it will be easy.  We will have sex any time I want it.  It is very important you are obedient to me with sex and do what I say.  Whatever I ask you will do without complaint."

[128] at 12-15.

The Court then engaged in the following colloquy with Skow.

THE COURT: Mr. Skow, have you discussed with your attorney the charges in the Indictment that you are pleading guilty to?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand this charge?

THE DEFENDANT: Yes, sir.

THE COURT: Do you agree with the prosecutor's summary of what you did in this case?

THE DEFENDANT: Yes, sir.

THE COURT: Are you, in fact, guilty?

THE DEFENDANT: Yes, sir.

[128] at 15-16.

Skow now raises a single ground for relief in his § 2255 motion, contending that he received "ineffective assistance of counsel." [116] at 4. In his brief, Skow asserts that: "[c]ounsel rendered constitutionally deficient represenation [sic] with regard to litigating a meritorious Fourth Amendment suppression issue. But for this ineffective assistance, the guilty plea, along with its appellate waiver, would never have been accepted and Skow would have proceeded to trial on all counts." [116-1] at 2.

Although a free-standing Fourth Amendment claim cannot be raised in collateral proceedings under § 2255, a movant may still raise a claim that counsel provided ineffective assistance with respect to a suppression issue. S*ee, e.g., Ray v. United States*, 721 F.3d 758, 762 (6th Cir. 2013) (collecting cases). Generally, to prevail on an ineffective assistance of counsel claim, a movant must show that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). More specifically, where defense counsel's alleged "failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that the Fourth Amendment claim is meritorious *and* that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (emphasis added). Indeed, Skow acknowledges and recites this standard. *See* [116-1] at 7.

But even if this Court assumes that Skow had a meritorious Fourth Amendment claim in this case, it is readily apparent that Skow cannot demonstrate "actual prejudice." As Skow admits, "[t]he government already possessed every e-mail, every text, every recorded phone call, every

7

recorded meeting" necessary to convict him on Count Two. [116-1] at 42. The only evidence that Skow sought to exclude was "evidence derived from the search of computers that were found in his house" [53] at 1; *see also* [34] at 6. Thus, the evidence subject to Skow's suppression motion related to Count Three (possession of child pornography), but not to Count Two (enticement of a minor).

Skow contends now that he could have successfully defended against Count Two at trial on the ground that he was "entrapped," but that he was afraid to try to do so after his suppression motion was denied because the images of child pornography would "likely infect the decision on the other two counts." [116-1] at 42. This entrapment argument is entirely unconvincing in light of lead role that Skow took in directing the transaction, including specifying the characteristics of the 14-year-old Guatemalan girl he desired to purchase and the many steps he took to prepare his home for her arrival. Moreover, accepting Skow's argument would require the Court improperly to assume that a jury would have ignored its instructions and acted in an unlawful manner. Because Skow cannot show a "reasonable probability" that he would have been acquitted had he proceeded to trial, it is clear that he did not suffer "actual prejudice."

Moreover, because Count Three of the Indictment was dropped as part of the Plea Agreement, the evidence recovered from Skow's home computer did not factor into his sentence on Count Two. Thus, it is clear that even if the evidence found on Skow's home computer had been excluded, there would have been no sentencing impact, either.

For all of the foregoing reasons, Skow's § 2255 motion should be denied.

In addition, Skow should be denied a Certificate of Appealability because he does not meet the requisite standard. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (requiring a two-part showing (1) "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," *and* (2) "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling"); *see also Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (holding that the *Slack v. McDaniel* standard will be strictly applied prospectively).

The Clerk is **DIRECTED** to terminate the referral of this case to the undersigned.

**SO RECOMMENDED AND DIRECTED**, this 12th day of April, 2016.

CATHERINE M. SALINAS
UNITED STATES MAGISTRATE JUDGE